## Case No. 17,684.

The WILLIAM.

[13 Hunt. Mer. Mag. 81.]

District Court, D. Massachusetts. 1853.

LIBEL FOR POSSESSION OF VESSEL—BOTTOMRY
BOND—EFFECT OF FRAUD.

[1. The owner of less than a half interest in a vessel, having title to the whole in his name, gave a bottomry bond covering the whole value of the vessel, though only one-third of the sum was actually due, and this bond was set up as a defense to a suit by the other part owner of the vessel for a conveyance of his share. Held, that the bond was fraudulent.]

[2. Where a bottomry bond covering the whole vessel is void in toto against a part owner of the vessel for fraud, it cannot be good in part against a purchaser from him, with knowledge that part of the debt secured by the bond was originally good.]

This was a libel for possession, by Andrew Carland, who claimed under one Bowler. James Downing and James Carbrey intervened, denying any right in Carland or his grantor, but claiming the sole title in Downing; and Carbrey set up a bottomry bond covering the whole value of the vessel, given him by Downing as sole owner, and which Downing, in his answer, admitted to be due

in full. The libellant contended that this bond was void, as against Bowler and his grantee, for fraud.

SPRAGUE, District Judge, said that the bill of sale was in Downing only, and the first question was, whether Bowler had an equitable interest which he could convey to Carland. THE COURT was satisfied, upon all the evidence, that Downing purchased the vessel to hold jointly for himself and Bowler, Bowler advancing more than half the purchase money; the balance, but little more than one-third, being loaned to Downing by Carbrey. They took possession together, and Bowler was driven from the vessel, as the evidence seems to show, intentionally on the part of Downing. Bowler, then, had an interest capable of assignment, and a proper bill of sale of his interest to Carland was produced. The vessel was sold by order of court upon the agreement of the parties to the suit, and the question is as to the disposal of the proceeds in the registry. Carbrey's bond, if good for its full amount, will take up all these proceeds. But the circumstances in proof satisfy the court that it is void for fraud, as to these parties. It was taken so as to cover the whole vessel, when only about one-third the sum was actually due. Such a bond is capable of being used fraudulently, and the use made of it will explain the original intention of the parties. When Carbrey took it, he not only knew that it was for nearly three times the debt, and that Downing had neither money nor credit, but also knew what money Bowler had advanced. When Bowler was turned from the vessel and utterly destitute, he applied to the counsel, and under advice of counsel, a demand was made on Downing for a conveyance to Bowler for a proper title to his share. This was refused. A suit was then brought for money had and received, and the vessel attached as Downing's property. Carbrey then, with the knowledge of Downing, gave formal notice to the sheriff of his bond for the whole value, and stated it to be all due, and by reason of this, the suit was dropped. Bowler then sold his interest for a small sum to the libellant, who having means and knowledge of the circumstances, brings this suit. Again, Carbrey and Downing resisted all right in Bowler, and jointly set up the bond as due to its full amount, and it was not until a full investigation and interrogatories to Carbrey under oath, .that the true debt was ascertained. The use made of the instrument has been grossly fraudulent. and this. added to the circumstances under which it was made, leads to the conclusion that it was made to be used if parties should think proper. It cannot, therefore, be set up in this court.

It is contended that Bowler is an alien, and could not, therefore, hold or convey a title. This defense was not set up in the pleadings, and therefore not before the court.

Some evidence has been admitted without objection, but the alienage is not satisfactorily proved. It is then contended that by bringing his suit against Downing for money had and received, Bowler has abandoned what title in the vessel he may have had. But he was compelled to bring that suit by the fraudulent conduct of these parties. and having abandoned it. they shall not stop him by their own act. It appears in evidence that Carland, the libellant, before he bought of Bowler, knew that Carbrey had actually advanced about one-third of the purchase money. Upon this it is contended that though the bond may be void in toto against Bowler, upon whose rights it was a fraud, yet it ought to be good, for its true amount against Carland, who knew of the advance. His honor said that there was an appearance of reason in this, but he was satisfied the principle was otherwise; and upon this ground; if a bond, void in toto against Bowler for fraud, may yet be good in part against a person who purchases of him, knowing that part of the debt was originally good, then Bowler cannot sell to such a purchaser for full value. The rule would limit the ability of the party defrauded to get a full price for his actual interest. It is for the benefit of Bowler and not of his purchaser, that the latter is allowed to resist the bond in toto.

Decree for one-half the proceeds to the libellant, with costs. The remainder to await the further order of the court upon applications from other parties.